UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANDARD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CAROL NELSON, *et al.*,<br><br>Defendants. | CASE NO. C07-0140 RSM<br><br>ORDER GRANTING DEFENDANT SIMPSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT NELSON'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT |

## **I.  INTRODUCTION**

This matter comes before the Court on defendant Victoria Simpson's Motion for Partial Summary Judgment and defendant Carol Nelson's Cross-Motion for Partial Summary Judgment.  (Dkts. #35 and #39).  Defendant Victoria Simpson ("Simpson") argues that she is the entitled beneficiary of a life insurance policy because the insured changed beneficiaries from defendant Carol Nelson ("Nelson") to defendant Simpson by complying with the amended requirements set forth by the insurer.  Alternatively, defendant Simpson argues that she should be declared the beneficiary of the life insurance policy under the doctrine of substantial compliance.  Defendant Carol Nelson ("Nelson") responds that the insured did not strictly or substantially comply with the requirements for changing beneficiaries under the policy.  Therefore defendant Nelson argues that she is the rightful beneficiary to the proceeds

MEMORANDUM ORDER
PAGE - 1

of the life insurance policy.

For the reasons set forth below, the Court agrees with defendant Simpson, and GRANTS defendant Simpson's Motion for Partial Summary Judgment.

## II.  DISCUSSION

### A.  Background Facts

On August 28, 2002, Kenneth K. Watanabe ("Watanabe") began employment with the City of Seattle ("the City").  Pursuant to his employment, Watanabe became a member of Group Life Insurance Policy No. 608217-D ("the Policy") issued by plaintiff Standard Insurance Company ("Standard") and owned by the City.  Watanabe possessed both Basic and Supplemental plans under the Policy.  When Watanabe commenced employment with the City of Seattle, he was involved in a non-marital relationship with defendant Nelson in which the two cohabitated.  (Dkt. #39 at 2-3).  Watanabe further designated defendant Nelson as the beneficiary under the Policy that became effective in January of 2003.  (Dkt. #41, Declaration of Dubs A. T. Herschlip, Exhibit 1).  However, Watanabe's relationship with defendant Nelson deteriorated and on August 1, 2004, Watanabe formed a domestic partnership with defendant Simpson.  (Dkt. #35, Exhibit A).

Watanabe then attempted to change the beneficiary from defendant Nelson to defendant Simpson under his Policy by making an electronic change on the City's benefits page online.  However, Watanabe was one of several employees who mistakenly attempted to change their beneficiaries by clicking the "Edit" button, rather than the 'Add Dependent/Beneficiary" button to effectuate the change.  (Dkt. #35, Exhibit C, Part 1 at 2).  Consequently, Michele Thurman ("Thurman"), the City's Senior Personnel Analyst in charge of overseeing the City's benefits programs, contacted Watanabe via telephone in November of 2004.  Thurman indicated to Watanabe that he would not be able to correct his online information electronically because the period for open enrollment online had closed.  *Id*. at 2. Watanabe therefore informed Thurman of his intent to change beneficiaries.  Thurman testified, "Mr. Watanabe informed me that he wanted Victoria Simpson to be his beneficiary at 100 percent[,]" and that she "made the change while he was on the phone with me." *Id.* at 4.

MEMORANDUM ORDER
PAGE - 2

Thurman subsequently made two separate entries - one for his Basic plan and another for his Supplemental plan - that designated defendant Simpson as the beneficiary under Watanabe's Policy. *Id*. at 5. Watanabe could thereafter enter his online personal benefits page to see that defendant Simpson was the new beneficiary under his Policy. Thurman testified:

> Q: So you're telling me - let's just say - throw out a date, November 2004. If Mr. Watanabe went online into the module, would he have seen any information indicating Victoria Simpson as a beneficiary?
>
> A: *If he went in there on I would say November 24th, when we uploaded the information, he would have seen Victoria Simpson as the beneficiary.*
>
> Q: So on November 24th, 2004, sometime thereabout, the City of Seattle -
>
> A: Yes.
>
> Q: - uploaded this new beneficiary information?
>
> A: Yes.

(Dkt. #41, Exhibit 4 at 10) (emphasis added).

Despite the entries made by Thurman and her belief that Watanabe intended to change beneficiaries, Thurman also testified that she "told [Watanabe] that he needed to back up the change with a paper enrollment form that had his signature on it." *Id.* at 12. Thurman further indicates that Watanabe understood her instructions. *Id.* Additionally, when asked if her entry constituted an electronic designation of a beneficiary under the Policy, Thurman responded that she "would have asked him for the written follow-up to the electronic designation." *Id*. at 17. Nevertheless, Thurman stated that the beneficiary change was complete. Thurman testified:

> Q: So in your mind, without this paper form being completed, that the beneficiary change wasn't actually effected.
>
> A; In my mind, yes, it was.
>
> Q: It was effected or it was not?
>
> A: It was -
>
> Q: It was effected.
>
> A: - because he stated to me his intent.

*Id*.

MEMORANDUM ORDER
PAGE - 3

Approximately one year after Watanabe made the online change, he met with Donna Russo ("Russo"), a personnel specialist with the City, to discuss an upcoming leave that he intended to take due to serious medical reasons. Russo indicated that at this meeting, she printed documents for Watanabe relating to his Policy. Russo testified:

> A: I printed [documents] so he would know who was listed as his current beneficiary.
>
> Q: Do you recall who that was that was listed as his current beneficiary?
>
> A: For the Standard Insurance?
>
> Q: Correct.
>
> A: Victoria Simpson.
>
> Q: So you showed him a printout for the purposes of showing him who his beneficiary of that particular life insurance policy was, and it was Victoria Simpson named on that printout.
>
> A: Uh-huh.
>
> Q: Did he understand that?
>
> A: Yes.

(Dkt. #35, Exhibit D at 4-5).

Meanwhile, in the fall of 2006, plaintiff Standard issued "Group Policy Amendment No. 9," an amendment regarding the means by which an insured could change a beneficiary. The amendment, provides in pertinent part:

> Effective October 1, 2004, [Group Policy 608217-D] is amended to read as follows:
>
> * * *
>
> You may name or change Beneficiaries at any time without the consent of the Beneficiary. You must name or change the Beneficiary in writing. *Writing includes a form signed by you or a verification from the Policyholder or Employer of an electronic or telephonic designation made by you.*

(Dkt. #35, Exhibit B) (emphasis added).

The purpose of Group Policy Amendment No. 9 was to create a system where the City's employees could enroll in policies or make changes to their policies online. (Dkt. #45, Declaration of Thurman at ¶ 3). This was consistent with the City's intention to devise a system of employee self-service. *Id.* Ultimately, the amendment was issued "to allow

MEMORANDUM ORDER
PAGE - 4

electronic designations to be made by City employees." *Id*. at ¶ 4. Group Policy Amendment No. 9 retroactively applied to October 1, 2004, which corresponded with when the City first offered its online services. *Id.*

Watanabe passed away on January 11, 2006. At the time of his death, Watanabe was insured in the sum of $197,500 under the Policy. In March of 2006, defendant Simpson filed a benefits claim with plaintiff Standard, identifying herself as the entitled beneficiary to the proceeds of the Policy. Shortly thereafter, defendant Nelson also contacted plaintiff Standard, claiming that she was entitled to 50% of the benefits payable under the Policy. Defendant Nelson subsequently amended her demand and now claims that she is entitled to the entire proceeds of the Policy. As a result, plaintiff Standard brought the instant diversity action in this Court by filing a Complaint in Interpleader pursuant to Fed. R. Civ. P. 22. After filing its complaint, plaintiff Standard moved for judgment in interpleader. The Court granted this unopposed motion on April 26, 2007. (Dkt. #17). The Court specifically discharged plaintiff Standard of any further liability beyond the $197,500 it deposited with the Court, and enjoined defendants from prosecuting any other claims against plaintiff Standard relating to the benefits under the Policy. *Id.*

Defendants Simpson and Nelson now bring their respective Motions for Partial Summary Judgment regarding their rights under the Policy.[1]

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other*

---

[1] Defendant Simpson also filed a third-party complaint against third-party defendant City of Seattle. Defendants' partial summary judgment motions to resolve their respective claims do not impact defendant Simpson's third-party complaint.

MEMORANDUM ORDER
PAGE - 5

1  *grounds,* 512 U.S. 79 (1994).  The moving party has the burden of demonstrating the absence
2  of a genuine issue of material fact for trial.  *See Anderson*, 477 U.S. at 257.  Mere
3  disagreement, or the bald assertion that a genuine issue of material fact exists, no longer
4  precludes the use of summary judgment.  *See California Architectural Bldg. Prods., Inc., v.*
5  *Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

6        Genuine factual issues are those for which the evidence is such that "a reasonable jury
7  could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248.  Material facts
8  are those which might affect the outcome of the suit under governing law.  *Id.*  In ruling on
9  summary judgment, a court does not weigh evidence to determine the truth of the matter, but
10 "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d
11 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747).  Furthermore,
12 conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat
13 summary judgment.  *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337,
14 345 (9th Cir. 1995).

15      **C.  Applicable Law**

16       The instant case is before the Court based on diversity of the parties.  Accordingly, the
17 issues presented are governed by Washington State law.  *See Klaxon Co. v. Stentor Electric*
18 *Mfg. Co.*, 313 U.S. 487, 496 (1941); *Insurance Co. N. Am. v. Federal Express Corp.*, 189
19 F.3d 914, 919 (9th Cir. 1999) (explaining that in an ordinary diversity case, federal courts
20 apply the substantive law of the forum in which the court is located).  Neither party disputes
21 that Washington State law is applicable in this case.

22      **D.  Interpretation of Group Policy Amendment No. 9**

23       It is well-established that interpretation of insurance policies is a question of law.
24 *Kitsap County v. Allstate Ins. Co.*, 136 Wash.2d 567, 575, 964 P.2d 1173 (1998).  An
25 insurance policy is a contract, and courts shall determine the contracting parties' intent by
26 resorting to a fair, reasonable, and sensible construction of the contract's language, as the
27 average purchaser would understand.  *See Sharbono v. Universal Underwriters Ins. Co.,* 139
28 Wash. App. 383, 394, 161 P.3d 406 (2007) (citing *Am. Nat'l Fire Ins. Co. v. B&L Trucking*

MEMORANDUM ORDER
PAGE - 6

*& Constr. Co. Inc.*, 134 Wash. 2d 413, 427, 951 P.2d 250 (1998). Furthermore, courts will enforce an insurance contract as written if the contact is clear and unambiguous. *See Allstate Ins. Co. v. Peasley*, 131 Wash.2d 420, 424, 932 P.2d 1244 (1997) (citations omitted); *see also Sharbono*, 139 Wash. App. at 394 ("If an insurance contract's language is neither ambiguous nor difficult to comprehend, we will enforce the intent expressed in the policy[.]"). An ambiguity exists only "if the language used in an insurance policy is fairly susceptible to two different reasonable interpretations." *American Star Ins. Co. v. Grice*, 121 Wash. 2d 869, 874, 854 P.2d 622 (1993).

In the instant case, the controlling insurance policy is Group Policy Amendment No. 9. As referenced above, this amendment requires that in order for an insured to change a beneficiary, a writing is required. A writing is further defined as either: (1) a form signed by the insured, or (2) a verification from the Policyholder or Employer of an electronic or telephonic designation made by the insured. Therefore the dispositive issue before the Court is whether Watanabe complied with the requirements for changing beneficiaries set forth by the clear and unequivocal language of Group Policy Amendment No. 9. It is overwhelming evident that he did. Here, there is no dispute that Watanabe edited his Policy online to change beneficiaries from defendant Nelson to defendant Simpson. Indeed, defendant Nelson acknowledges that "[i]t is uncontroverted that [Thurman] designated [defendant Simpson] online as the beneficiary in accord with her belief as to the insured's intent[.]" (Dkt. #39 at 7). Therefore Watanabe made the requisite electronic designation of his change of beneficiary as required by Group Policy Amendment No. 9.

The City, as Watanabe's employer, also verified this designation when Thurman telephoned Watanabe and Watanabe specifically informed Thurman of his intent to have defendant Simpson be his beneficiary under the Policy. Thurman complied and made the requested change by making the appropriate entries online. In addition, this verification is supported by the fact that by November 24, 2004, if Watanabe entered his online benefits page, he would have seen that defendant Simpson was the beneficiary under his Policy. The City further verified this designation when Watanabe met with personnel specialist Russo in

MEMORANDUM ORDER
PAGE - 7

the fall of 2005, and Russo provided Watanabe with documents affirming the change of beneficiaries from defendant Nelson to defendant Simpson.

Notwithstanding the City's verification, defendant Nelson argues that a paper copy signed by Watanabe effectuating this change was required. However, this argument is inconsistent with the intention of the parties to this insurance policy. Plaintiff Standard and the City are the parties to this insurance contract and the purpose of Group Policy Amendment No. 9 was to allow City employees to make changes to their policies electronically without having to submit a signed paper copy as defendant Nelson suggests. This purpose is evidenced by both the plain language of the amendment, and the declaration of Thurman referenced above. Thurman's declaration traces the rationale behind allowing for electronic designations which was consistent with the City's desire to allow employees to self-serve their policies online. Thus, the Court finds no merit in defendant Nelson's arguments.

Given that Courts must interpret insurance policies by resorting to a fair, reasonable, and sensible construction of the policy's language, this Court finds that Watanabe complied with the requirements of Group Policy Amendment No. 9. Specifically, this Court finds that: (1) Watanabe made an electronic designation changing the beneficiary under his Policy from defendant Nelson to defendant Simpson; and that (2) the City verified this change.

### E. Substantial Compliance

Because the Court has found in favor of defendant Simpson based on the clear and unequivocal language of Group Policy Amendment No. 9, the Court finds it unnecessary to discuss the parties' respective arguments regarding the doctrine of substantial compliance under Washington law.

### III. CONCLUSION

Having reviewed defendant Simpson's motion for partial summary judgment (Dkt. #35), defendant Nelson's cross-motion for partial summary judgment (Dkt. #39), the parties' respective responses and replies, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendant Victoria Simpson's Motion for Partial Summary Judgment (Dkt. #35)

MEMORANDUM ORDER
PAGE - 8

is GRANTED.

(2) Defendant Carol Nelson's Cross-Motion for Partial Summary Judgment (Dkt. #39) is DENIED.

(3) The Clerk is authorized and directed to draw a check from the remaining funds deposited by Plaintiff Standard Insurance Company in the registry of this Court, and pay such funds to defendant Victoria Simpson's counsel at the following address:

> Reed Law Firm PLLC
> c/o Rebecca Reed
> 601 107th Avenue NE, 19th Floor
> Bellevue, WA 98004

(4) This Order does not close the case as defendant Victoria Simpson's third-party complaint against third-party defendant City of Seattle remains pending before the Court.

(5) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 7th day of November, 2007.

*(signature)*
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE